327 S.E.2d 385

**Franklin ANDERSON**

v.

**STATE WORKERS' COMPENSATION COMMISSIONER and Eastern Associated Coal Corp.**

**No. 16440.**

Supreme Court of Appeals of West Virginia.

March 1, 1985.

Robert F. Cohen, Jr., Cohen, Abate & Cohen, Fairmont, for appellant.

George D. Blizzard, II, Shaffer & Shaffer, Madison, for appellees.

BROTHERTON, Justice:

Franklin D. Anderson, appellant, was granted a permanent total disability ("PTD") award by final order of the State Workers' Compensation Commissioner dated July 9, 1982. By a letter dated August 6, 1982, the appellant protested the benefit rate and date from which benefits should be paid. Litigation on the rate issue ensued. On February 10, 1983, by final order the Commissioner affirmed the benefit rate and date. The appellant appealed to the Appeal Board, and the Appeal Board affirmed. Appellant now appeals to this Court.

Appellant suffered a compensable pelvic injury in 1965, and was granted an 18% permanent partial disability ("PPD") award. Later, he filed an application for occupational pneumoconiosis benefits on July 27, 1974. The Commissioner, pursuant to W.Va.Code § 23-4-14 (1981), adopted the date of filing as the date of last exposure, i.e., the "date of injury," for the administration of the claim. The appellant continued to work in his usual occupation until February 24, 1983, and retired effective March 7, 1983.

Following extensive litigation and appeals and ultimately at the express direction of this Court in *Franklin v. Eastern Assoc. Coal Corp.*, No. 15250 (December 2, 1981), the Commissioner granted the appellant a 65% PPD award in his occupational pneumoconiosis claim, paying benefits for 260 weeks. The award was paid for the period July 27, 1974, through July 21, 1979.

On May 20, 1982, the appellant petitioned to reopen[1] his claim for consideration of a second injury award. In support of his reopening, appellant introduced evidence of a 2% progression of his 1965 pelvic injury. On the basis of this new medical evidence, the Commissioner granted the reopening petition and ultimately entered a second injury PTD life award by order dated July 9, 1982.

1. *See* W.Va.Code § 23-4-16 (1981).

The PTD award was calculated from July 22, 1979, the day following the last payment day under the prior 65% PPD award. The appellant received "back pay" totalling $26,849.43, and continues to receive payments under his PTD award at a rate based on his 1974 wages. The appellant raises three objections to the Commissioner's calculation of his PTD award. We will treat each below.

## I.

First, appellant asserts that he is entitled to take advantage of a 1976 amendment to Code § 23-4-14 (1973). The appellant's claim for occupational pneumoconiosis benefits was filed on July 27, 1974. At that time the applicable statute, W.Va.Code § 23-4-14 (1973), did not include the use of the daily wage in calculating a claimant's average weekly wage for the purpose of determining his benefit rate. Section 23-4-14 was amended in 1976, however, to include such a provision. The appellant's claim was pending before the Commissioner on the effective date of the amendment. Despite the change in the Code provision, the Commissioner did not use the daily wage in calculating the appellant's average weekly wage. The Commissioner concedes on appeal that this was an error. We agree, since the change involved was procedural, and reverse the order of the Appeal Board on this point. Cases in litigation will receive the benefit of procedural statutory changes favorable to the employee wherever possible. *Pnakovich v. State Workmen's Compensation Comm'r*, 163 W.Va. 583, 592, 259 S.E.2d 127, 132 (1979).

## II.

The appellant was still working when he filed his occupational pneumoconiosis claim on July 27, 1974, and continued to work until February 24, 1983. During this period the appellant's salary increased significantly. The appellant contends that the Commissioner acted arbitrarily in permanently setting the date of his filing for

occupational pneumoconiosis benefits, July 27, 1974, as the date of last exposure, and thereby freezing the salary base for his benefit rate. Instead, the appellant suggests that in an occupational pneumoconiosis claim, where the claimant is still working, the date of injury for purposes of determining the benefit rate must be readjusted periodically to reflect additional exposure to the hazards of pneumoconiosis subsequent to the date of application for compensation benefits without the necessity of filing a petition for modification of an order or a claim for a new injury. Under appellant's theory, the "date of last exposure" would be a floating concept until a claimant retired, died, or otherwise ceased to be exposed to the hazards of pneumoconiosis. It is hard to believe that the legislature intended such an involved concept. The virtual impossibility of administering the system advocated by the appellant bolsters this conclusion.

It is clear from a reading of W.Va.Code § 23–4–14 (1981) [2] and other statutes in Chapter 23 that the West Virginia Legislature contemplated a single date of injury on which to compute the benefits for disability.[3] The appellant's suggestion that the date of last exposure would have to be readjusted with every day that the appellant was exposed to new hazards would not only go against the legislature's intent, but would also be administratively unworkable.

■ The present system provides ample remedies for the injured worker and has the advantage of administrative efficiency. The Code provides two avenues of relief for persons who incur additional disability due to occupational pneumoconiosis. West Virginia Code § 23–4–1 (1981) provides for the filing of an occupational pneumoconiosis claim any time sufficient exposure occurs. Each exposure to pneumoconiosis which is brought forward as a claim is deemed "an injury," the same as a broken limb or any other injury. *Ford v. State Workmen's Compensation Comm'r,* 160 W.Va. 629, 631, 236 S.E.2d 234, 235 (1977). When an individual who has already filed at least one occupational pneumoconiosis claim elects to file a new claim under this Code section, a new date of last exposure ("date of injury") is assigned for the purpose of calculating benefits. In filing a new claim, a claimant may receive the benefit of wage levels which are contemporary with his more recent exposure. The other method for addressing the issue of additional occupational pneumoconiosis disability is through W.Va.Code § 23–4–16 (1981), which provides for modification of an existing award. Additional benefits under this section are calculated on the basis of the original date of injury assigned when the claim is filed. Under this latter procedure, the claimant has no burden to prove additional exposure; only additional disability. This approach is the method selected by the appellant in the instant case.

The legislature's intent is clear and it has amply provided a workable system of relief for the injured worker in the appellant's situation. We hold, therefore, that the Commissioner's practice of fixing the date a claim for occupational pneumoconiosis was filed as the date of last exposure is a correct interpretation of the statute, and its application to appellant was not error in this case.

### III.

■ The appellant's third assignment of error is that his PTD award should relate back to July 27, 1974, the date he filed his occupational pneumoconiosis claim. Al-

---

**2.** W.Va.Code § 23–4–14 (1981) provides in part:

The average weekly wage earnings, whenever earned, of the injured person *at the date of injury,* and the average weekly wage in West Virginia as determined by the commissioner of employment security, in effect at the date of injury, shall be taken as the basis upon which to compute the benefits.

*In cases involving occupational pneumoconiosis or other occupational diseases, the "date*

*of injury" shall be the date of the last exposure to the hazards of occupational pneumoconiosis or other occupational diseases.*
(emphasis added).

**3.** The cardinal rule in the construction of statutes is to ascertain and give effect to the intention of the legislature. *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268, 273 (1983). Where the legislature has expressed its intentions, this Court will not interfere.

though it is not entirely clear, it appears that appellant's PTD award was based on a finding that his pelvic injury had progressed to a 20% disability. This, combined with the 65% disability found in the 1974 occupational pneumoconiosis claim, produced an 85% disability. Under our statute, a combination of permanent partial disabilities totalling 85% or more constitutes total disability. W.Va.Code § 23–4–6(d) (1981).

Appellant offered no evidence indicating that he was totally disabled during the period covered by his PPD award. On the contrary, the reopening of his claim was based on a 1982 medical opinion for his 1965 pelvic injury. Relation back to 1974 thus is not supported by the evidence in the record. The Commissioner ordered that benefits be paid from the day after the termination of appellant's PPD award. This was not clearly wrong, and we, therefore, find no error.[4]

For the foregoing reasons, the order of the Workers' Compensation Appeal Board is hereby reversed and the case remanded for further action consistent with this opinion.

Reversed and remanded.

---

**4.** We do not hold that a PTD award granted under these circumstances must relate back to the end of the last PPD award as a matter of law. If anything, this action by the Commissioner was a liberal interpretation of the statute, which benefited the appellant. The general rule in workers' compensation cases that the evidence will be construed liberally in favor of the claimant does not relieve the claimant of the burden of establishing his claim by proper and satisfactory proof. *Linville v. State Workmen's Compensation Comm'r,* 160 W.Va. 549, 553–54, 236 S.E.2d 41, 44 (1977).